**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X

In re:

                                                    Chapter 7 Case No.:
                                                    8–04–87445 (REG)


BARBARA G. ROSS,

                    Debtor,

------------------------------------------------------------------------- X


## <u>MEMORANDUM DECISION</u>

Before the Court is the Trustee's motion ("Motion") seeking to reopen the bankruptcy case of Barbara G. Ross (the "Debtor") pursuant to 11 U.S.C. § 350(b) in order to administer settlement proceeds offered to the Debtor in connection with a medical device implanted in the Debtor and removed pre-petition.  The Debtor opposes the Motion, claiming that the settlement proceeds do not fit within the definition of property of the bankruptcy estate pursuant to 11 U.S.C. § 541.  The parties agree that neither the Debtor nor the medical community had knowledge that the device could cause the Debtor harm as of the date the petition was filed, and in fact the Debtor has yet to suffer physical harm from the device.  However, the Trustee argues that because the device was implanted pre-petition, any cause of action that may ultimately accrue based upon possible harm from the device, including the settlement proceeds, constitutes property of the estate under applicable statutory and case law.

This case presents the Court with the challenge of applying the relevant statutes and case law in an environment that is constantly changing, as advances in science and technology permit the detection of risk of harm at earlier stages, often before any actual symptoms manifest themselves.  What standard should the Court adopt in determining whether a cause of action, based upon an unrecognized injury to a debtor, is property of the bankruptcy estate?  If the Trustee's

position is taken to its logical conclusion, the Court would be adopting a standard that would capture for the benefit of the estate any proceeds recovered by a debtor in his or her lifetime, so long as the right to recover the proceeds can be traced to a prepetition event.   In this case, determining whether the settlement proceeds are property of the estate is complicated by the fact that the Debtor suffered no injury prepetition or post-petition.  The settlement payment was made in exchange for the Debtor's agreement not to bring a suit in the future.   In cases such as this involving potential tort claims, the proper focus is on whether there was a viable cause of action the Debtor could bring under applicable law on the date the petition was filed.  If an action existed, regardless of what the Debtor knew, then that cause of action and all its proceeds would constitute property of the estate. If, however, as is true in this case, no cause of action had matured, it is irrelevant whether the Debtor ultimately develops an injury:  the cause of action resulting from that injury would not be property of the estate under § 541.

This analysis is consistent with applicable case law, including the seminal Supreme Court case *Segal v. Rochelle*, 382 U.S. 375, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966).  As of the date the petition was filed, the Debtor had no expectation that a device implanted in her and removed prepetition, for which no warning had ever been issued, would create a right to receive the settlement proceeds several years later.  Had the medical community been aware of any danger inherent in using the device pre-petition, and had the Debtor suffered an injury, the answer would be different.  Because the elements necessary to commence an action under state law were not present as of the date of the petition, the right to receive the settlement proceeds are not sufficiently rooted in the Debtor's prepetition past to warrant inclusion of the settlement proceeds in the Debtor's bankruptcy estate.

For the reasons detailed below, the Motion is denied.

## **FACTS**

In 1998, the Debtor underwent a surgical procedure to implant a transvaginal surgical mesh used to treat stress urinary incontinence (the "Device"). In 1999, the Debtor, for reasons not specified in the record, underwent another surgical procedure to remove the Device. On November 23, 2004 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 petition and did not report any assets pertaining to the Device in her bankruptcy schedules. On March 12, 2005, the Debtor received her discharge. On July 13, 2011, the FDA issued a public alert primarily regarding "serious complications" and health risks associated with transvaginal surgical mesh used to treat pelvic organ prolapse, which is different than the mesh implanted in the Debtor. In 2012, after viewing a television advertisement from which the Debtor first learned that the Device may be "defective," the Debtor retained mass tort counsel to seek recovery. Although the Debtor was not eligible to join the class action in connection with the Device, the Debtor was offered settlement proceeds in the amount of $105,172.26—which is funded by a surplus from the existing class action—in exchange for the Debtor's release of all present or future claims in connection with the Device. The parties did not specify whether the Debtor filed an action and provided few details regarding the class action. The record is devoid of evidence of any injury to the Debtor resulting from the Device, and according to the Debtor's mass tort counsel, the Device is still being used by the medical community.

On October 7, 2015, after the Debtor's mass tort counsel informed the Trustee of the settlement offer, the Trustee filed a motion to reopen the case to administer the settlement proceeds for the benefit of the Debtor's creditors. On November 4, 2015, the Debtor filed an objection to the Trustee's motion. On November 12, 2015 and January 27, 2016, the Trustee filed replies to the Debtor's objection. On February 17, 2016, the Debtor filed a supplemental opposition.

3

## **DISCUSSION**

### *I.      Standard to Reopen*

Pursuant to Rule 5010 of the Federal Rules of Bankruptcy Procedure, a debtor or other party in interest may make a motion to reopen a case.  Pursuant to section 350(b), "[a] case *may* be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  The statute's permissive language provides the Court with broad discretion to determine whether a party filed a motion to reopen in good faith or has demonstrated good cause.  *In re Olejnik*, No. 09–76714, 2010 WL 4366183 (Bankr.E.D.N.Y. Oct.28, 2010); *In re Meneses*, No. 05–86811, 2010 WL 813975 (Bankr.E.D.N.Y. Mar. 3, 2010); *In re Lowery*, 398 B.R. 512, 514 (Bankr.E.D.N.Y.2008).  The Court will only exercise its discretion to reopen a case in circumstances where relief may ultimately be afforded to a party, but not where reopening is futile or a waste of judicial resources.  *See In re Polynar Mardy & Marie D. Joseph*, No. 10–73819, 2011 WL 917545 (Bankr.E.D.N.Y. Mar. 15, 2011).

The Court must determine whether the Trustee has met his burden of establishing that there is sufficient "cause" under section 350(b).  The Bankruptcy Code does not define section 350(b)'s "cause."  *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir.1996). The only purpose of reopening this case would be to administer the settlement proceeds for the benefit of the Debtor's creditors.  To determine whether cause exists, the Court must resolve the issue of whether the settlement proceeds are pre-petition assets that the Trustee is entitled to administer or whether the settlement proceeds belong to the Debtor, and therefore reopening the case would serve no purpose.

### *II.      Property of the Estate*

4

a. *Bankruptcy Code Section 541.*

Upon the filing of a chapter 7 petition, a bankruptcy estate is created. Subject to the limitations enumerated in subsections 541(b), (c), and (d), subsections 541(a)(1) and (a)(2) define the initial pool of property interests that forms the estate. Section 541(a)(1) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate. Section 541(a)(2) provides that spousal community property becomes property of the estate. Sections 541(a)(3) through (a)(7) expand the estate property pool to include certain post-petition property, including inheritances, divorce settlements, and life insurance policies acquired within one hundred eighty days after the bankruptcy filing. Section 541(a)(6) provides that property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate," but expressly excludes "earnings from services performed by an individual debtor after the commencement of the case." Section 541(a)(7) is a catch-all that sweeps into the estate "[a]ny interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added). Congress enacted section 541(a)(7) in order (1) to clarify its intention that section 541 is an "all-embracing definition"; and (2) to ensure that property interests created with or by property of the estate are themselves property of the estate. *See* 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978).

Section 541(a)(1)'s "property" is broad and encompasses "all legal or equitable interests of the debtor in property." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2312, 76 L.Ed.2d 515 (1983); *In re Jackson*, 593 F.3d 171, 176 (2d. Cir. 2010). Legislative history indicates that section 541 is given a broad definition to include "all kinds of property, including tangible or intangible property . . . and all other forms of property." H.R.Rep. No. 95–595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6323. "Property" is "construed most

generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966).  Congress intended to bring "anything of value" that a debtor owns into the estate.  H.R.Rep. No. 95–595, at 175–76.

"Property" includes causes of action possessed by a debtor at the time of the filing of the case.  *Whiting Pools*, 462 U.S. at 205 n. 9; *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir.1989); *Jackson*, 593 F.3d at 176.  The House and Senate reports on section 541(a)(1)'s language make clear that it was intended to bring a debtor's claims and causes of action into the estate.  *See* H.R.Rep. No. 95–595, at 367.  Even certain causes of action commenced post-petition may be included in the estate.  11 U.S.C. § 541(a)(7).

Although federal law determines when a debtor's interest in property is property of the bankruptcy estate, property interests are created and defined by state law.  *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir.2006); *In re Duarte*, 492 B.R. 100, 103 (Bankr. E.D.N.Y. 2011).  This Court looks to New York law to determine whether and to what extent the Debtor had an interest in the settlement proceeds when she filed her bankruptcy petition.  *See Butner*, 440 U.S. at 55.

Even if New York law recognizes a property interest, section 541(a)(1) includes a temporal limit on the interests that become part of the estate, limiting interests only to those a debtor has "as of the commencement of the case."  *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 119 (2d Cir.1991) (explaining that as a matter of law the trustee had no cause of action because none had accrued before bankruptcy); *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 759

(S.D.N.Y.2008).  In other words, the Trustee administers only those property interests belonging to the Debtor when the petition is filed, subject to the aforementioned exceptions in section 541.

       *b.  Segal v. Rochelle*

The Bankruptcy Code and legislative history do not specify when a claim is sufficiently matured "as of the commencement of the case" to constitute an "interest of the debtor in property." *Segal v. Rochelle* is the leading decision on such determination.  382 U.S. 375, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966).  Indeed, section 541(a)'s legislative history expressly reflects Congress's intent to follow the *result* of *Segal.*  H.R.Rep. No. 95–595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5868, 6323.

In *Segal,* the Supreme Court construed the term "property" under the Bankruptcy Act, the predecessor to the Bankruptcy Code, and held that a post-petition tax refund premised on pre-petition losses is property of the estate.  The debtor in *Segal*, the Supreme Court explained, had an interest in the refund as of the petition date, and it was only the enjoyment of such interest that was postponed.  Because only the passage of time was necessary for the debtor to claim the tax refund, the Supreme Court explained that the post-petition tax refund is "sufficiently rooted in the pre-bankruptcy past" to be considered property of the estate.  Despite the broad reach given to "property," *Segal* does not expand property of the estate to include legal or equitable interests that a debtor acquires post-petition.

The Second Circuit, along with most other Circuits, recognizes the continued vitality of *Segal.  See, e.g., Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir.2008) ("Post-petition property will become property of the estate only if it is *sufficiently rooted* in the pre-bankruptcy past."); *Official Comm. Of Unsecured Creditors v. PSS Streamship Co., Inc. (In re Prudential Lines Inc.)*, 928 F.2d 565, 571 (2d Cir. 1991); *accord Beaman v. Shearin (In re*

*Shearin)*, 224 F.3d 346, 351 (4th Cir. 2000); *Underhill v. Huntington Nat'l Bank (In re Underhill)*, 579 F. App'x 480, 481 (6th Cir. 2014); *Fix v. First State Bank of Roscoe*, 559 F.3d 803, 809 (8th Cir. 2009); *Martinez v. Lincoln Gen. Ins. Co.*, 417 F. App'x 711, 712 (9th Cir. 2011); *Cook v. Baca*, 512 F. App'x 810, 820 (10th Cir. 2013) (citing *In re Dittmar*, 618 F.3d 1199, 1208 (10th Cir. 2010)).  Under the analysis set forth in *Segal*, courts generally employ a three-step process:

> (1) determine the extent to which the claim is rooted in the pre-bankruptcy past; (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the Bankruptcy Act (now the Bankruptcy Code), the claim is more properly categorized as prepetition property that should come into the estate or a post-petition asset that the Debtor should take free of the claims of pre-bankruptcy creditors . . . this analysis does not turn on whether, under state law, the claim had accrued as of the petition date.

*In re Borchert*, No. 04-65653, 2010 WL 153384, at *2-3 (Bankr. N.D.N.Y. Jan. 8, 2010); *Riccitelli v. Grasso (In re Riccitelli)*, 320 B.R. at 490–91.

### c.  Application of Statute and Case Law

Relying on *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), and section 541's language, courts examine whether, as of the petition date, a cause of action had accrued under applicable state law.  *See, e.g.*, *Swift v. Seidler (In re Swift)*, 198 B.R. 927 (Bankr.W.D.Tex.1996); *In re de Hertogh*, 412 B.R. 24 (Bankr. D. Conn. 2009); *Holstein v. Knopfler (In re Holstein)*, 321 B.R. 229 (Bankr.N.D.Ill.2005); *Underhill v. Huntington Nat'l Bank (In re Underhill)*, 579 Fed. Appx. 480 (6th Cir.2014); *In re Patterson*, Nos. 08–3025, 07–31735, 2008 WL 2276961 (Bankr.N.D.Ohio 2008); *Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218 (5th Cir. 2001).  "In common parlance, a right accrues when it comes into existence," *United States v. Lindsay*, 346 U.S. 568, 569, 74 S.Ct. 287, 98 L.Ed. 300 (1954), and the "standard rule" is that a claim accrues "when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).  If any element of a cause of

action accrued post-petition, courts reason, the cause of action is not property of the estate, even if all of the *conduct* giving rise to the cause of action occurred pre-petition. Consider a personal injury claim based on an incident occurring pre-petition and on injuries manifesting themselves post-petition—such a claim is not property of the estate because the injury, which is a requisite element of a personal injury cause of action, manifested itself only after the commencement of the bankruptcy case.

This analysis is consistent with the rationale of *Segal,* because no action that accrues post-petition can be "'sufficiently rooted in the pre-bankruptcy past'" of a debtor. In re *Witko,* 374 F.3d 1040, 1043 (citing to *Segal*, 382 U.S. at 515). As the Court of Appeals for the 11th Circuit correctly recognized, "[t]he Supreme Court did not allow the *Segal* trustee to assert more rights than the debtor had at the commencement of the case; it merely allowed the trustee to seek the interests existing, though still undetermined in quantity, at the time the debtor filed his petition." *Id*. At 1043. This analysis is also consistent with Second Circuit authority and section 541. *See Bell v. Bell (In re Bell)*, 225 F.3d 203, 215 (2d Cir. 2000) ("Unlike pre-petition claims, claims which accrue to the debtor post-petition generally will not adhere to the estate and remain actionable by the debtor . . . property acquired post-petition by the debtor does not enter the estate; it remains the separate property of the debtor."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir.1995) ("Whether the rights belong to the debtor . . . is a question of state law."); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 119 (2d Cir.1991) (explaining that a in order to determine whether a cause of action belongs to the bankruptcy estate, the court normally would determine whether the claim in question is able to withstand a motion to dismiss). The Chapter 7 trustee, standing in the debtor's shoes, can maintain only those actions that the debtor could have *brought* prior to or when she filed her bankruptcy petition. *See Hirsch*, 72 F.3d at 1093.

The Trustee cites to *In re Salander*, 450 B.R. 37 (Bankr S.D.N.Y. 2011), *In re Osborne*, 490 B.R. 75 (Bankr. S.D.N.Y. 2013) and *Stanley v. Community Bank, N.A.*, No. 8:08-CV-925 (GLS/RFT), 2009 WL 261333 (N.D.N.Y. Feb. 4, 2009) in support of his assertion that a claim need not have accrued prepetition in order to become property of a debtor's estate. *In re Salander* is factually distinguishable from the facts of this case. In *Salander*, a debtor sought to pursue a forgery claim against one of her creditors after the bankruptcy case was closed, and the Bankruptcy Court found that the claim was property of the estate despite the fact that her knowledge of the forgery was not clearly established prepetition. The Bankruptcy Court found that the claim was sufficiently rooted in the debtor's prepetition past, regardless of when she actually discovered the forgery. Because a claim of forgery required imputed, not actual discovery, the Bankruptcy Court put little emphasis on this element. *Id*. at *46.   In our case, there is no injury and no knowledge of wrongdoing, and these missing elements would not meet the standard adopted in *Salander*. To the extent that the *Salander* Court determined that all of the elements need not have accrued prepetition, the Court respectfully disagrees for the reasons outlined above.

Similarly, *Stanley v. Community Bank, N.A.* involved a debtor who brought a lawsuit against several banks based on allegations that the banks were complicit with her husband's fraud and forgery, which occurred prepetition.  The debtor claimed to have discovered the misconduct post-petition, and the Bankruptcy Court concluded that the debtor's knowledge, whether prepetition or post-petition, would not affect the status of the claim as one belonging to her estate. *Id*. at *3.  As in *Salander*, knowledge could be actual or imputed, and there is no indication that the Court in *Salander* would find that despite the lack of injury and damages prepetition, the Debtor's right to the settlement proceeds is sufficiently rooted in her prepetition past to render it property of her bankruptcy estate.  Finally, *In re Osborne* involved repeat filers who did not

disclose a multi-million dollar malpractice suit against the debtors' former bankruptcy attorneys. The Court in *Osborne* does not discuss the elements of the malpractice suit, other than to state that although a cause of action must have existed at the time of filing, all of the elements need not have accrued under applicable law. *Id.*, 490 B.R. at 83. To the extent *Osborne* stands for the proposition that accrual of a cause of action can be differentiated from the existence of a cause of action, the Court declines to follow *Osborne*.

### *Analysis*

Because section 541(a)(1) dictates that property of the estate includes "all legal or equitable interests of the debtor" that exist "as of the commencement of the case," the question is generally temporal: when did the debtor acquire a legal interest in the settlement proceeds?  In this case, the only events that took place pre-petition were the implant and removal of the Device.   Did implanting the Device, standing alone, vest rights in the Debtor to receive the settlement proceeds as of the Petition Date?

Under New York law, a tort claim does not accrue until the debtor sustains an injury as a result of the complained of act or omission. *Berkshire Life Ins. Co. of Am. v. Ochs*, No. 06CV0657DRHWDW, 2009 WL 799956, at *4 (E.D.N.Y. Mar. 24, 2009) (explaining that "a tort cause of action cannot accrue until an injury is sustained").   So long as the required element of injury is hypothetical, the debtor has no legally cognizable cause of action, and thus has no property interest and any asserted claim would be subject to dismissal as unripe for adjudication.

While there is no dispute that the Device was implanted and removed prepetition, the record is barren of any evidence that she suffered any injury prepetition.   Mere removal of the Device does not, standing alone, imply that removal is the product of an injury.   In fact, the Debtor's affidavit suggests that she first learned that she may have a claim post-petition as a result

of viewing a television advertisement.  In order to have an interest in a tort cause of action under New York law, "injury" requires more than mere exposure to a defective product.  *Gilks v. Olay Co., Inc.*, 30 F. Supp.2d 438, 443 (S.D.N.Y. 1998).

Even of the Court were to consider a claim based on failure to warn, no such claim had accrued as of the Petition Date.  In order to maintain a failure to warn claim under New York law, a claimant must show "(1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses which it knew or should have known; and (3) that failure to do so was the proximate cause of harm."  *Colon ex. Re. Molina v. BIC USA, Inc.*, 199 F. Supp.2d 53, 84 (S.D.N.Y. 2001). Because there was no harm to the Debtor prepetition, a failure to warn claim did not exist.

 If the Court were to adopt the Trustee's analysis, pre-petition exposure, without more, would be sufficient to create a pre-petition "legal or equitable interest."  Such analysis would expand property of the estate to include any interest so long as a trustee can tie such interest to a debtor's "pre-bankruptcy past" and would transform section 341 meetings of creditors into health examinations.  Opportunistic trustees would be scrambling to latch onto every possible claim that may someday arise, however attenuated.

One aspect of the Trustee's argument that  Court agrees with is that a *debtor's* lack of knowledge—distinct from the medical community's knowledge—of a cause of action is irrelevant for the purpose of determining ownership in a bankruptcy proceeding.  The proposition that a debtor's knowledge is required conflates the principles underlying discovery rules, statutes of limitation, and accrual of causes of action.  *See generally State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 796 (5th Cir. 1997).  Setting the clock in motion—vis-à-vis triggering the statute of limitations—is influenced by concepts such as the discovery rule under which the statute

of limitations is tolled until an injured party "discovers" or should have discovered an injury. Put differently, statutes of limitation often begin to run on a date other than the date on which the cause of action accrued. However, if a debtor is not aware of any injury, and there is no recognition in the medical community that a product used by a debtor pre-petition could be harmful, there is no prepetition cause of action to which a trustee can claim for the benefit of the estate.

*Substance of the Settlement*

Finally, the settlement proceeds are not generated from the Debtor's commencement of an adversary proceeding against a defendant. Intuitively, willingness to pay the Debtor arguably implies that a cause of action accrued. This, however, fails to account for the substance of the settlement. The settlement in this case requires the Debtor would release all possible claims, present and future regarding the Device. In other words, the Debtor would promise not to sue, regardless of whether the Debtor presently has or ever will have a claim. *See Blacks Law Dictionary* (10th ed. 2014) (defining "release" as "the act of giving up a right or claim to the person against whom it could have been enforced"). Assuming the Debtor was not injured as of the commencement of the case, as the record appears to indicate, the settlement proceeds are offered in exchange for the Debtor's pre-injury release to absolve others in advance of any liability and to transfer the risk of any such liability to the Debtor.

That the settlement proceeds were offered in connection with a class action—especially a class action for which the Debtor was not eligible—bolsters the foregoing. It is well established that releases and "settlement agreements are creatures of private contract law" and, in this case, the product of a "deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of the underlying causes of action." *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 312 (3d Cir. 2011). In an effort to avoid protracted present

13

and future litigation, class action defendants seek to "achieve 'global peace' by obtaining releases from all those who might wish to assert claims, *meritorious or not*," which is a "valid, and valuable incentive."  *Id.* at *310* (emphasis added).  The settlement policy is so important that those with meritless claims "barred under applicable state law" are generally included in classes to receive settlement proceeds.  *Id.* ("We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action.").  In fact, the Second Circuit is one of a minority of circuits to approve settlements when a "court believes that [the underlying] claims may be *meritless*."  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243-44 (2d Cir. 2012) (emphasis added).  Contrary findings "would doom the class certification process from the outset" and those "ultimately excluded would no doubt go right back into court to continue to assert their claims," defeating the purpose of class action defendants obtaining an assurance that they have "extinguished every claim from every potential plaintiff."  *Id.*

Based on the evidence in the record, no cause of action had accrued as of the Petition Date, and therefore, the settlement proceeds do not constitute property of the Debtor's estate under the Bankruptcy Code and applicable case law.   Because reopening the case will serve no purpose, the Motion is denied.

## **CONCLUSION**

For the foregoing reasons, the Motion is denied.   An order consistent with this Memorandum Decision shall be entered forthwith.



**Dated: Central Islip, New York**
**April 14, 2016**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**

15